Capitol Motor Car Co. v. Commissioner.
Capitol Motor Car Co. v. Commissioner
Docket No. 84259.
United States Tax Court
T.C. Memo 1962-64; 1962 Tax Ct. Memo LEXIS 244; 21 T.C.M. (CCH) 353; T.C.M. (RIA) 62064; March 23, 1962
*244 Petitioner used proceeds from award of condemnation of improved realty to purchase unimproved parcel of realty. Held, the property purchased was not similar or related in service or use to converted property and the gain realized in the condemnation was to be recognized as the transaction was not within the nonrecognition of gain provisions of section 1033(a)(3)(A), I.R.C. of 1954. Respondent's determination that salaries paid to petitioner's two officers were unreasonable in certain amounts is upheld. Roger K. Powell, Esq., 17 S. High St., Columbus, Ohio, for the petitioner. Henry T. Nicholas, Esq., for the respondent. *245 MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in the petitioner's income tax for the fiscal years ended October 31, 1955, 1956 and 1957 in the amounts of $3,013.82, $3,009.53 and $31,338.76, respectively. The issues are (1) whether the proceeds received by petitioner on October 17, 1957 from the condemnation of its property were reinvested in property similar or related in service or use to the condemned property within the meaning of section 1033 of the Internal Revenue Code of 1954; [1] and (2) whether certain salaries paid by petitioner to its officers were reasonable. Findings of Fact Some of the facts were stipulated and they are herein included by this reference. Capitol Motor Car Co., hereinafter called the petitioner, is a corporation organized under the law of the State of Ohio, with its principal place of business in Columbus, Ohio. Petitioner filed its corporation income tax returns for the fiscal years ended October 31, 1955, 1956 and 1957 with the district *246 director of internal revenue at Columbus, Ohio. Petitioner acquired improved real estate at 665 West Goodale Boulevard, Columbus, Ohio, at some time prior to 1949. The building on this property was partially two stories high and partially three stories high, of stucco and Perma-stone construction, and containing approximately 20,000 square feet of floor space. The lot was irregular in size, ranging from 232 feet by 110 feet to 232 feet by 98 feet. Prior to September 1, 1949 the petitioner used the building for an automobile sales and service agency. Between September 1, 1949 and December 1, 1952 the property was rented first as an automobile agency and then to the Ohio School of Trades as a school. Beginning December 1, 1952 the property was rented to the Ohio Fuel and Gas Company for a paint shop and for other purposes connected with the production, transportation and distribution of gas. A lease for a period of 39 months at a monthly rental of $1,500 was in effect for the period October 1, 1954 through December 31, 1957. This lease was renewable at the option of the lessee for additional terms. During the fiscal year ended October 31, 1957, Robert Bennett was president of the *247 petitioner at an annual salary of $12,000. Robert was also president of the petitioner in the prior two fiscal years (1955 and 1956) but without salary. From 1947 to about June 1956 Robert was employed at another automobile agency as a salesman at an annual salary ranging from $4,800 to $6,000. He did not work full time as a salesman because of ill health. In 1959 Robert resigned as president of petitioner because of ill health. During the fiscal years ending October 31, 1955, 1956 and 1957, Maude B. Bennett, his wife, was secretary-treasurer of the petitioner at an annual salary of $7,200, $7,200 and $5,100, and during these years her duties consisted primarily of collecting the rent from the petitioner's lessee and making necessary disbursements. During the fiscal years ending October 31, 1955, 1956 and 1957 Robert and his wife, Maude, each owned 50 per cent of the outstanding stock of petitioner. During the fiscal years here involved the petitioner employed an accountant who kept the books of the petitioner, reconciled bank accounts and prepared the petitioner's income tax returns. Early in 1956 the City of Columbus initiated condemnation proceedings to acquire this property *248 for highway use. Petitioner was awarded $180,000 on the condemnation of this property, which was paid petitioner on October 17, 1957, less $27,353.09, which was paid in satisfaction of a mortgage held by the Western and Southern Life Insurance Company. Petitioner was personally liable for the payment of this mortgage. Petitioner realized a gain of $125,355.06 on the conversion of this property. On November 27, 1957 the petitioner purchased 3.9 acres of unimproved real estate at 1299 Olentangy Boulevard, Columbus, Ohio, for $137,000, which represented a portion of the award of $180,000 on the condemned property. Petitioner had acquired an option to purchase this property in November 1956 and Robert Bennett then started to examine possible uses for the property. There were many inquiries from potential lessees about the property, including a bowling alley project and an office building for doctors. Nothing materialized from these inquiries. On April 28, 1958 the petitioner entered into a contract to construct a motel on the unimproved real estate at 1299 Olentangy Boulevard and to lease the proposed motel to Olentangy Inn Corporation, the lease to begin from the time the motel would *249 be ready for occupancy. Petitioner was unable to complete the necessary financing, and on February 27, 1959 the lease was modified to provide for the construction of the motel by the lessee. The lease called for a rental of $3,000 a month and was for a term of 30 years with an option to renew for another 10 years. Construction of the motel commenced immediately after the modification of the original contract on February 27, 1959. Petitioner did not include any portion of the gain of $125,355.06 in its taxable income for the fiscal year ended October 31, 1957. Respondent determined that the entire gain was includible in petitioner's income for the fiscal year 1957, with the explanation that petitioner "failed to reinvest the proceeds received as a result of the involuntary conversion of property at 665 West Goodale, into similar property as required by Section 1033 of the Internal Revenue Code of 1954." Respondent also disallowed as excessive the deduction of $4,800 (out of $7,200) for a portion of the salary paid by petitioner to Maude in each of the fiscal years ending October 31, 1955 and 1956, and disallowed a deduction of $2,700 (out of $5,100) for a *250 portion of her salary for the fiscal year ending October 31, 1957. Respondent disallowed as excessive a deduction of $4,500 (out of $12,000) for a portion of the salary paid by petitioner to Robert in the fiscal year ending October 31, 1957. Opinion Respondent contends that petitioner's $125,355.06 gain realized in the condemnation of its property on October 17, 1957, must be recognized because petitioner did not use the proceeds from such involuntary conversion to replace the property converted by purchasing other property "similar or related in service or use to the property so converted" within the meaning of section 1033(a)(3)(A). [2]
*251 In construing the words "similar or related in service or use" this Court has adhered to the so-called "functional test." This means the new property itself must be similar or related in service or use, to the converted property, as distinguished from a possible similarity of the taxpayer's use of both properties for investment or production of rental income. Our views are set forth at length in Liant Record, Inc., 36 T.C. 224, and Thomas McCaffrey, Jr., 31 T.C. 505, affirmed 275 F. 2d 27. In the absence of any argument on the issue (petitioner filed no brief) we see no reason to state them again. Petitioner's converted property was improved realty which for years prior to the condemnation had been rented to a tenant for a paint shop and for other purposes connected with the production, transportation and distribution of gas. Petitioner received the award from the condemnation of this property on October 17, 1957, and on November 27, 1957, purchased 3.9 acres of unimproved real estate in the same city. As of October 31, 1958, a year after the close of petitioner's fiscal year 1957, the new property remained unimproved. See section 1033(a)(3)(B). *252 It is obvious, under these facts, that petitioner's replacement of rent-producing improved real estate with several acres of unimproved realty does not meet the statutory test of "similar or related in service or use" as interpreted by this Court. We hold for the respondent on this issue. The second issue involves the reasonableness of certain salaries paid by petitioner to its two stockholders. Respondent determined that $2,400 was reasonable compensation (within the meaning of section 162) for Maude in the fiscal years 1955, 1956 and 1957, and that $7,500 was reasonable compensation for Robert in the fiscal year 1957. Respondent's determination is presumptively correct and petitioner has the burden of showing it to be wrong. Petitioner has not met this burden, neither as to Maude's salary nor as to Robert's salary. Maude's duties for the fiscal years 1955, 1956 and 1957 were quite limited, amounting to little more than collecting and depositing the monthly rent from petitioner's sole tenant and writing a few checks for disbursements from time to time. Moreover, petitioner employed an accountant during these years who kept the books, prepared returns and performed other accounting *253 duties. Nor does the record show that her duties and responsibilities changed appreciably in the fiscal year 1957 when the condemnation proceedings were taking place or when the effort was being made to find a tenant for the new property (which was not purchased by petitioner until November 27, 1957, after the close of petitioner's fiscal year 1957, although petitioner did have an option on the land from November 1956). In connection with the condemnation proceedings it does not appear that Maude did much more than participate in the hiring of appraisers and attorneys and perhaps conduct them through the condemned property when necessary. As for the efforts to find a tenant, Maude's testimony is extremely vague both as to times involved and the exact nature of her work, which seemed to consist principally of answering inquiries. On the basis of this record we cannot find that a reasonable compensation for Maude would exceed $2,400 in the fiscal years 1955, 1956 and 1957. Similarly, we do not believe that petitioner has met its burden of showing that a reasonable salary for Robert in the fiscal year 1957 exceeded $7,500. Robert's testimony was that after November 1, 1956, when petitioner *254 acquired an option on the new property, he put a sign for lease on the property and then answered calls. He mentioned specifically a bowling alley project on which "we spent about a month" and also a doctors' office building on which Robert "fooled with * * * for six months." Neither of these projects materialized. It is not at all clear what Robert's duties were or the amount of time he spent on them, and it is extremely difficult, with the paucity of the evidence before us, to measure the value of these services. It does appear in the record that he was in ill health for years prior to 1957 and was only able to work part time and, in fact, he did resign as president of petitioner in 1959 because of ill health. It does not appear from the record that we need consider Robert's efforts in connection with the lease finally signed for the motel on the new property. The initial lease (under which petitioner itself was to construct the motel) was not executed until April 28, 1958, and after petitioner's efforts to finance the construction failed, a modified lease was executed on February 27, 1959 providing for construction of a motel by the lessee. We cannot find, on the basis of this record, *255 that a reasonable compensation for Robert would exceed $7,500 in the fiscal year 1957. Decision will be entered for the respondent. Footnotes
1. All section references will be to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
2. SEC. 1033. INVOLUNTARY CONVERSIONS. (a) General Rule. - If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat of imminence thereof) is compulsorily or involuntarily converted - * * *
(3) Conversion into money where disposition occurred after 1950. - Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph: (A) Nonrecognition of gain. - If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. * * *
(B) Period within which property must be replaced. - The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat of imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending - (i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, * * *.↩