*Decisions will be entered under Rule 50*

Loco Realty Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 80253.   Filed March 28, 1961.

*Urban C. Bergbauer, Jr., Esq.*, for the petitioner.
*William J. McNamara, Esq.*, for the respondent.

**1062**

OPINION.

BLACK, *Judge:* We have only one issue in this proceeding and that issue is: Were the proceeds from the involuntary conversion of petitioner's rental property located at 17th and Pine Street, St. Louis, in 1955 invested in property "similar or related in service or use" to the condemned property? There is no dispute as to the amount of gain which petitioner realized in 1955 from the involuntary conversion of its property; the dispute is as to whether such gain is relieved from taxation by the provisions of section 1033, I.R.C. 1954. Petitioner relies upon the provisions of section 1033, pertinent parts of which are printed in the margin.[1]

In its brief petitioner stresses the fact that it owned and held the Pine Street property, which was involuntarily converted, for rental purposes and that it invested the proceeds of the condemnation in the Forest Park property, likewise for rental purposes. Therefore, says petitioner, the transaction comes within the provisions of section 1033 quoted in the margin. Petitioner's thinking along these lines is shown by its assignment of error which reads as follows:

---

[1] SEC. 1033. INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—.

(1) CONVERSION INTO SIMILAR PROPERTY.—Into property similar or related in service or use to the property so converted, no gain shall be recognized.

In determining the taxable income for the year 1955 the Commissioner erroneously included as an addition to income proceeds from the condemnation of a building held by the petitioner for *rental* purposes, which proceeds were used by the petitioner to purchase other *rental* property.  [Emphasis supplied.]

But it is not enough that one holding property for rental purposes, when deprived of it in an involuntary conversion, invests the proceeds in other property for rental purposes.  While exact physical duplication is not required in order that no gain be recognized, an amount of money equivalent to the proceeds received pursuant to the involuntary conversion must be expended in the acquisition of other property similar or related in service or use to the converted property in order to have nonrecognition of gain.

Now what do the facts in the instant case show?  They show, as we interpret the facts, that on June 8, 1955, petitioner received from the City of St. Louis $101,000 in reimbursement for the condemnation and taking of petitioner's Pine Street property.  The facts further show that on May 1, 1955, more than a month prior to the time petitioner received the $101,000 from the City of St. Louis, that David Burdeau, one of the stockholders of petitioner and also a stockholder of Burdeau Real Estate Company, took title to the Forest Park property.  The weight of the evidence, as we interpret it, is that he took title to this property, not for petitioner Loco Realty Company but for the Burdeau Real Estate Company.  Certainly the evidence does not show that any of the money which petitioner received from the condemnation of its Pine Street property was used in the purchase of the Forest Park property.  The evidence shows that payment for the Forest Park property was made as follows: At the time of purchase David gave back a first deed of trust in the amount of $59,000 to Champion Industries and $22,500 was borrowed from the Bank of Overland and paid to Champion Industries.  The note to the Bank of Overland was signed by the Burdeau Real Estate Company.  The record does not disclose where the remaining $2,500 of the $84,000 purchase price came from.

If we were able to hold that on May 1, 1955, David Burdeau took title as a strawman for petitioner as the beneficial owner of the Forest Park property, we might be able to hold that at that time the two properties were similar or related in service or use.  But we can make no such finding of fact.  We are unable to make a finding of fact that petitioner became the owner of the Forest Park property on any earlier date than November 8, 1955, when it received a general warranty deed to the property from David.  At this point it may be well to state that the Commissioner makes no contention that petitioner did not invest the $101,000 in question in the Forest Park property within the period of time specified by the applicable statute.  The argument that the Commissioner stresses is that the $101,000

was not used to acquire the Forest Park property when it was acquired May 1, 1955, but that what happened was that the $101,000 was used by petitioner in the alteration of the Forest Park property which was deeded to it on November 8, 1955. By that time very extensive improvements paid for by petitioner had been made in the property by Burdeau Real Estate Company. It had been leased to the Stocker Hausmann Company of St. Louis.

Our Findings of Fact show Stocker Hausmann was engaged in the warehousing and distribution of wholesale groceries to institutionaltype businesses. Through its president, Stocker Hausmann had been negotiating for lease of the premises since about May 1955, but the Forest Park property was not suitable for Stocker Hausmann's purposes in its existing condition. A memorandum for renovation of the buildings was incorporated in the June 23, 1955, lease which was signed by David, as lessor. The lease was for a term of 15 years and provided that the premises could only be used as a warehouse for wholesale groceries. Thus it seems from the facts that it was on November 8, 1955, that petitioner became the owner of the Forest Park property. When it acquired the property on that date it was a very much changed property from what it was on May 1, 1955, when David acquired it as strawman for Burdeau Real Estate Company.

At the time petitioner acquired the Forest Park property in November 1955, the building had been converted to use, and under the terms of the lease could only be used, as a warehouse and distribution center for wholesale groceries. By petitioner's own testimony approximately $72,000 had been spent in the conversion. It was one-storied, contained approximately 38,000 square feet of floorspace, and it had three excavated loading docks of steel and reinforced concrete extending 40 feet inside the building. All of its exterior walls had been bricked in with concrete blocks (with the exception of the office space and exits). Walls had been torn down, the floor ramped, and the roofs extended to make the east and west buildings one. We do not think that under the facts here we can make a finding of fact that at the time petitioner acquired the Forest Park property November 8, 1955, it was "similar or related in service or use" to the converted Pine Street property, and we have made no such finding of fact.

In *Thomas McCaffrey, Jr.*, 31 T.C. 505 (1958), the taxpayer's real property which was situated in a downtown industrial section of Pittsburgh, Pennsylvania, and which, at the time of acquisition as well as during taxpayer's ownership, was leased for and was used for parking purposes, was "involuntarily converted" into cash through condemnation proceedings. The taxpayer used the proceeds of the conversion to purchase stock in an acquisition of the control

of a corporation which owned real property situated in the industrial section of New Castle, Pennsylvania, and which the corporation leased to the Federal Civil Defense Administration for use for warehouse purposes. Under these facts, we held that there was not sufficient similarity or relation in service or use of the corporation's Pittsburgh property to its purchased property to entitle the taxpayer to the nonrecognition of gain provisions of section 112(f), 1939 Code. The Third Circuit affirmed us in *McCaffrey* v. *Commissioner*, 275 F. 2d 27, and, among other things, said:

> In summary, then, the Pittsburgh property was suitable and used for public parking lot purposes and the New Castle property was suitable and used for warehouse purposes. Clearly they were not "similar" properties, physically or otherwise, nor were they "similar or related in service or use."

To change somewhat the language of the court quoted above, but to echo its same meaning, we would say in the instant case: In summary, the Pine Street property was suitable for use by L. J. O'Neill & Company, shoe manufacturers, which company was a subsidiary of Florsheim Shoe Company, in its business. The Forest Park property, when acquired by petitioner on November 8, 1955, was suitable for and was used by Stocker Hausmann as a warehouse in warehousing and distributing wholesale groceries to institutional-type businesses. It seems clear to us that the condemned property and the newly acquired property were not "similar" properties physically or otherwise nor were they "similar or related in service or use."

Therefore, in view of these facts, we sustain respondent in the adjustment which he has made, disallowing petitioner's claim of right to the nonrecognition provisions of section 1033, I.R.C. 1954.

*Decision will be entered for the respondent.*

