The CLIFTON INVESTMENT COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 14738.

United States Court of Appeals
Sixth Circuit.

Feb. 6, 1963.

**720**

Irving Harris, Cincinnati, Ohio (Charles F. Hartsock, Cincinnati, Ohio, on the brief), for petitioner.

Arthur E. Strout, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before MILLER, Circuit Judge, and BOYD and McNAMEE, District Judges.

BOYD, District Judge.

Petitioner is a real estate investment corporation organized and existing under the laws of the State of Ohio, with headquarters in Cincinnati. In 1956 the petitioner sold to the City of Cincinnati under its threat of exercising its power of eminent domain a six-story office building, known as the United Bank Building, located in the downtown section of that city, which building was held by petitioner for production of rental income from commercial tenants. The funds realized from the sale of this property to the city were used by the petitioner to purchase eighty percent of the outstanding stock of The Times Square Hotel of New York, Inc., also an Ohio corporation, which had as its sole asset a contract to buy the Times Square Hotel of New York City. The purchase of the hotel was effected by the corporation. The taxpayer-petitioner contends herein that the purchase of the controlling stock in the hotel corporation was an investment in property "similar or related in service or use" to the office building it had been forced to sell, thus deserving of the nonrecognition of gain provisions of Section 1033(a) (3) (A), Internal Revenue Code of 1954 (Title 26 U.S.C., Section 1033(a) (3) (A).[1] More specifically, the taxpayer contends that since both the properties herein were productive of rental income, the similarity contemplat-

---

1. "§ 1033. (a) General rule.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted * * *.

. "(3) Conversion into money where disposition occurred after 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph

ed by the statute aforesaid exists. The Commissioner ruled to the contrary, holding that any gain from the sale of the office building was recognizable and a deficiency was assessed against the taxpayer for the year 1956 in the amount of $19,057.09. The Tax Court agreed with the Commissioner, finding that the properties themselves were not "similar or related in service or use" as required by the statute. 36 T.C. 569. From the decision of the Tax Court this appeal was perfected.

In order to determine whether the requisite similarity existed under the statute between the properties herein, the Tax Court applied the so-called "functional test" or "end-use test." This it seems has been the Tax Court's traditional line of inquiry, when similar cases under the within statute have been considered by it. This approach takes into account only the actual physical end use to which the properties involved are put, whether that use be by the owner-taxpayer or by his tenant; that is, whether the taxpayer-owner is the actual user of the property or merely holds it for investment purposes, as in the case of a lessor. We reject the functional test as applied to the holder of investment property, who replaces such property with other investment property, as in the case at bar.

The Tax Court in this case relied in part on its earlier decision in Liant Record, Inc. v. Commissioner, 36 T.C. 224 and chiefly on the decision of the Court of Appeals for the Third Circuit in McCaffrey v. Commissioner, 275 F.2d 27, 1960, cert. denied 363 U.S. 828, 80 S.Ct. 1598, 4 L.Ed.2d 1523, the latter case approving and applying the aforesaid functional test in such a case as here presented. However, the Court of Appeals for the Second Circuit has since reversed the Tax Court's decision in Liant, 303 F.2d 326, 1962, and in so doing advanced what we consider to be the soundest approach among the number of decisions on this point. We need not here review all the relevant decisions, since this is done in the recent cases of Loco Realty Company v. Commissioner, 306 F.2d 207 (C.A.8) 1962, and Pohn v. Commissioner, 309 F.2d 427 (C.A.7) 1962, both of which decisions approved the Second Circuit Court's approach in Liant, the court in the Pohn case relying specifically on the Liant decision.

Congress must have intended that in order for the taxpayer to obtain the tax benefits of Section 1033 he must have continuity of interest as to the original property and its replacement in order that the taxpayer not be given a tax-free alteration of his interest. In short, the properties must be reasonably similar in their relation to the taxpayer. This reasonableness, as noted in the Liant case, is dependent upon a number of factors, all bearing on whether or not the relation of the taxpayer to the property has been changed. The ultimate use to which the properties are put, then, does not control the inquiry, when the taxpayer is not the user of the properties as in the case under consideration. As exemplary of the factors which are relevant the Liant decision mentions the following, after advancement of its "relation of the properties to the taxpayer" test:

"In applying such a test to a lessor, a court must compare, inter alia, the extent and type of the lessor's management activity, the amount and kind of services rendered by him to

(2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

"(A) Nonrecognition of gain.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property

so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. * * *"

the tenants, and the nature of his business risks connected with the properties."

Thus, each case is dependent on its peculiar facts and the factors bearing on the service or use of the properties to the taxpayer must be closely examined. The Tax Court employed an erroneous test in this case, but on examination of the record, the correctness of the result is manifest.

■ The record before us discloses that the United Bank Building and the Times Square Hotel both produced rental income to the taxpayer. However, examination of what the properties required in the way of services to the tenants, management activity, and commercial tenancy considerations reveals an alteration of the taxpayer's interest. The record herein shows that the taxpayer corporation itself managed the United Bank Building, but deemed it necessary to procure professional management for the Times Square Hotel. There were primarily two employees for the United Bank Building, who afforded elevator and janitorial services to the tenants. In the Times Square Hotel between 130 and 140 employees were necessary to attend the hotel operation and offer services to the commercial tenants and hotel guests. Approximately 96% of the rental income from the hotel was from the guest room facilities and the large number of transients required daily services of varying kinds. Furniture, linens, personal services of every description were furnished the hotel guests, which were not furnished the commercial tenants of the United Bank Building. The hotel guests reside in the hotel rooms and that is obviously the only reason they are tenants. In the office building herein several tenants also used parts of the premises for living quarters, but were clearly not furnished the typical services the hotel guest

demands. There was no great limitation placed on the types of commercial tenants to whom space was rented in the United Bank Building, but as the enumeration of commercial tenants of the hotel building reveals, space therein was leased for the most part and primarily with an eye to how such a business operation might fit in with the operation of a hotel, how it relates to the hotel guests. It is common experience that the services offered by a lessee of business premises in a hotel will reflect in the minds of its guests on the service they associate with the hotel itself. If a leased restaurant in a hotel offers good or bad service, there is a tendency to think of the food service at the hotel as good or bad. A number of unique business considerations enter when leasing commercial space in a hotel which do not apply to an office building.

We consider there to be, then, a material variance between the relation of the office building in question and the within hotel operation of the taxpayer, in the light of the relevant inquiry found in the Liant case. It is true that what the taxpayer derived from both properties herein was generally the same, rental income. But what the properties demanded of the taxpayer in the way of management, services, and relations to its tenants materially varied. That which the taxpayer receives from his properties and that which such properties demand of the taxpayer must both be considered in determining whether or not the properties are similar or related in service or use to the taxpayer.[2]

The decision of the Tax Court is affirmed.

SHACKELFORD MILLER, Jr., Circuit Judge (concurring).

I concur in the result reached in the majority opinion.

2. Congress has since provided that replacement of property held for productive use in trade or business or for investment purposes with property of "like kind" satisfies the "similar or related in service or use" requirement. However, the acquisition of controlling interest in stock of a corporation holding property was specifically excepted from the relaxation of the test. Title 26 U.S.C. Section 1033(g) (1) and (2). (Technical Amendments Act of 1958).

However, I am not willing to adopt, without some modification thereof, the test adopted and applied in Liant Record, Inc. v. Commissioner, 303 F.2d 326, C.A. 2d, upon which the majority opinion relies. I think that the investment character of the properties involved should be given more consideration than what seems to me is given by the ruling in the Liant case, although I do not think that investment basis alone is sufficient to comply with the statute, as Steuart Brothers, Inc. v. Commissioner, 261 F.2d 580, C.A.4th, might be construed as holding. As pointed out in Loco Realty Co. v. Commissioner, 306 F.2d 207, 215, C.A. 8th, the statute was not intended to penalize but to protect persons whose property may be taken on condemnation and, accordingly, should be construed liberally. I agree with the standard adopted in the opinion in that case, although for our present purposes I do not think that it results in a reversal of the decision of the Tax Court.