**S. E. PONTICOS, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 15543.**

United States Court of Appeals Sixth Circuit.

Nov. 25, 1964.

Stuard Wegener, Covington, Ky., for petitioner.

William A. Friedlander, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before CECIL and PHILLIPS, Circuit Judges, and McCREE, District Judge.

HARRY PHILLIPS, Circuit Judge.

The taxpayer is an Ohio corporation engaged solely in the business of investment in real estate. Among its holdings for investment purposes it owned a six story industrial warehouse building in downtown Cincinnati, which was leased to tenants. This property was sold to the City of Cincinnati under threat of condemnation in 1956, resulting in the realization of a capital gain of $122,916.33. The funds received from this sale were reinvested in 1956 and 1957 in the construction of a residential garden-type apartment development in Cincinnati, which the taxpayer has continued to hold for investment purposes.

The sole issue in this case is whether the residential apartment property was sufficiently "similar or related in purpose or use" to the warehouse property to make available to the taxpayer the non-recognition provision of Section 1033 (a) (3) (A) of the Internal Revenue Code of 1954, 26 U.S.C. § 1033.[1]

A more detailed statement of facts, most of which are stipulated, is set forth in the decision of the Tax Court and will not be repeated here. 40 T.C. 60. With three judges dissenting, the Tax Court held that the residential apartment property did not constitute "property similar

---

1. "§ 1033. Involuntary conversions

"(a) *General rule.—* * * *

"(3) *Conversion into money where disposition occurred after 1950.—* * * *

"(A) *Nonrecognition of gain.—*If the taxpayer * * * for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock. * * * *"

or related in service or use" to the downtown property and that the taxpayer therefore is not entitled to the tax benefits provided by the statute upon the disposition of the converted building.

■ We reverse on authority of Capitol Motor Car Co. v. Commissioner, 314 F.2d 469 (C.A.6), in which this court held that a motel constructed by the taxpayer's lessee was "property similar or related in service or use" to condemned rental commercial property held by the taxpayer for investment purposes.

■ The Tax Court recognized that the "functional" or "end-use" test is not the correct test to be applied in this situation, Clifton Investment Co. v. Commissioner, 312 F.2d 719 (C.A.6), cert. denied, 373 U.S. 921, 83 S.Ct. 1524, 10 L.Ed.2d 422; Liant Record, Inc. v. Commissioner, 303 F.2d 326 (C.A.2). Applying the reasoning of these two decisions, however, the Tax Court drew an inference from the undisputed facts and held that in building the garden-type apartments here involved, the taxpayer has not reestablished itself in a reasonably similar business position, but, to the contrary, the nature of its investment has changed materially and its management activities are different. Strong reliance was placed upon the fact that the taxpayer's brochure describes its apartments as being furnished with heat, water, air-conditioning, laundries, hot-water heaters, central vacuum cleaning system and well-equipped kitchens; that playgrounds, a recreation area and swimming pool are available to tenants; that the taxpayer provides a janitor to empty waste cans, clean hallways, keep the grounds and clear sidewalks and streets of ice and snow; and that these services were not provided by the taxpayer at its warehouse property in downtown Cincinnati, where the only duties of the taxpayer as lessor were to maintain the exterior of the building and repair damages caused by fire.

In Clifton Investment Co. v. Commissioner, supra, this court quoted with approval the following language from Liant:

" 'In applying such a test to a lessor, a court must compare, inter alia, the extent and type of the lessor's management activity, the amount and kind of services rendered by him to the tenants, and the nature of his business risks connected with the properties.' " 312 F.2d at 721.

We find this case to be distinguishable on its facts from Clifton Investment Co. v. Commissioner. There a six-story office building was held by the taxpayer for the production of rental income from commercial tenants and was sold to the City of Cincinnati under threat of condemnation. The funds realized from the sale of this office building were used to purchase controlling stock in an Ohio corporation which acquired Times Square Hotel in New York City. This hotel thereafter was managed and operated by this corporation. The operation of the hotel required between 130 and 140 employees to provide necessary services to commercial tenants and hotel guests. Approximately 96 per cent of the rental income was from guest room facilities for which daily services were provided. This court in the language quoted below pointed out the wide disparity between the business of operating a hotel and the business of holding an office building for investment purposes:

"Furniture, linens, personal services of every description were furnished the hotel guests, which were not furnished the commercial tenants of the United Bank Building. The hotel guests reside in the hotel rooms and that is obviously the only reason they are tenants. In the office building herein several tenants also used parts of the premises for living quarters, but were clearly not furnished the typical services the hotel guest demands. There was no great limitation placed on the types of commercial tenants to whom space was rented in the United Bank Building, but as the enumeration

of commercial tenants of the hotel building reveals, space therein was leased for the most part and primarily with an eye to how such a business operation might fit in with the operation of a hotel, how it relates to the hotel guests. It is common experience that the services offered by a lessee of business premises in a hotel will reflect in the minds of its guests on the service they associate with the hotel itself. If a leased restaurant in a hotel offers good or bad service, there is a tendency to think of the food service at the hotel as good or bad. A number of unique business considerations enter when leasing commercial space in a hotel which do not apply to an office building." 312 F.2d at 722.

There is a substantial difference in the services provided in the management and operation of a hotel in New York City and the rental of apartments in the apartment house owned by the taxpayer in the instant case. We are not willing to hold that a taxpayer who is compelled to sell, under threat of condemnation, a downtown commercial building from which it received rentals, and invests the proceeds in an apartment house, must lose the benefits of the statute merely because it hires a janitor to render services essential to apartment house maintenance and provides a swimming pool and other attractions customary in a modern apartment house which are not customary in a downtown commercial building.

As said by Judge Shackelford Miller, Jr., in his concurring opinion in Clifton Investment Co. v. Commissioner, supra:

"[T]he statute was not intended to penalize but to protect persons whose property may be taken on condemnation and, accordingly, should be construed liberally." 312 F.2d at 723.

Drawing inferences from the undisputed facts, the tax court held that the taxpayer "has re-established itself in a business position that varies materially from its former position." For the rea-

sons stated, we hold that the inferences so drawn are clearly erroneous.

We find no substantial difference between the relationship of the taxpayer as lessor of the converted property and lessor of apartments in the replacement property.

The decision of the tax court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.