HARVEY J. JOHNSON AND HELENE C. JOHNSON, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3422–62.    Filed March 9, 1965.

*John H. Bustamante,* for the petitioners.
*John P. Graham,* for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency in the income taxes of petitioners for the calendar year 1957 in the amount of $19,122.32.

The only issue presented is whether the petitioner, Helene C. Johnson, reinvested the proceeds she received from farm property, which was taken by the Cleveland & Pittsburgh Railroad Co. pursuant to condemnation proceedings, in other property "similar or related in service or use" to the converted property within the meaning of section 1033(a)(3)(A) of the Internal Revenue Code of 1954.

FINDINGS OF FACT

Some of the facts are stipulated and are so found.

Harvey J. Johnson and Helene C. Johnson (herein sometimes called petitioners) are husband and wife. They filed their joint Federal income tax return for the taxable year 1957 with the district director of internal revenue, Cleveland, Ohio. On June 11, 1959, they filed an amended joint Federal income tax return for 1957 with the same district director.

On October 23, 1946, Harvey J. Johnson purchased by land contract a tract of rural farmland containing 55.57 [1] acres in Summit County, Ohio. The property adjoined for slightly over one-half mile the right-of-way of the Cleveland & Pittsburgh Railroad Co. Located on the property was a three-room cottage with attached clubhouse, a barn with stables, a toolshed, and a five-car garage.

Title to the 55.57 acres was obtained by Harvey J. Johnson by deed dated September 2, 1952. In 1956, Harvey conveyed this property by deed to his wife, Helene C. Johnson (herein called petitioner). This conveyance was a gift without monetary consideration.

Harvey J. Johnson purchased the farm property for investment purposes, realizing that because of industrial expansion in that area the property would probably increase in value. The property was located approximately halfway between Cleveland and Akron, just west of Route 8 which is the main highway connecting Cleveland and Akron. A racetrack was located not too far from the property as well as industrial plants of the Ford Motor Co., the Chrysler Corp., and General Motors.

The 55.57-acre tract was commonly known as Johnson's Farm. From 1946 until sometime in 1954, petitioners leased the property to the Breezy Air Riding Club, a nonprofit Ohio corporation, which used the premises as its headquarters and as a place for its members to ride horses and carry on their social activities. The club had a liquor license. There was a written lease in 1946 which was extended orally on a month-to-month basis after 1947. The agreed rental was to be $400 per month with the lessee exclusively operating the premises. However, contrary to the terms of the lease, the riding club paid only such amounts as it could afford to pay. Petitioners made the necessary repairs and paid the taxes, insurance, and utilities. Harvey J. Johnson was one of the founders of the club and served as its president for the first 2 years. Petitioners occasionally visited the property, although they never occupied the premises.

During 1956 petitioners made arrangements with several horse owners at the nearby racetrack to keep their horses in the barn at the

---

[1] All figures with respect to acres contained in this tract of farmland were stipulated.

farm for livery or stable fees. The gross income from the farm property in 1956 was $1,995, as compared with $2,321.65 in 1954.

In 1954 there were newspaper reports that the Cleveland & Pittsburgh Railroad Co. might need a marshalling yard in the general area. In 1955 and 1956 negotiations were conducted by the railroad with a view toward purchasing petitioner's property. The railroad company condemned and took a portion of the 55.57 acres under eminent domain for use as a marshalling yard. The value of the property was contested in court, resulting in a decision entered on March 15, 1957, which passed possession to the condemned portion and awarded the petitioner $111,360 for the 33.34 acres taken and $16,544 for severance damages to the remaining parcel of 21.32 acres. The total award was $127,904. The net gain received by petitioner was $94,010.22.

Petitioner still owns the remaining parcel of 21.32 acres. However, all of the buildings located on the property were on the 33.34 acres taken by the railroad.

Petitioner attempted to purchase identical property, but was unable to do so because no other large tracts of farmland were available in that area.

On September 18, 1958, the petitioner purchased 0.526 acres of urban property from the Rock Investment Co. for $112,500. This property abutted hotel property already owned by the petitioners. The replacement property was triangular in shape and was located at the intersection of East 55th and Woodland Avenue in Cleveland, Ohio. At the time of the purchase the property was subject to an existing 10-year lease to the Standard Oil Co. of Ohio and was used for the operation of a Sohio service station, which is still in operation. The lease provided for basic rental from the lessee of $600 per month, for additional rental based on gallonage of gas pumped, and for real estate taxes and other fixed charges to be paid by the lessee, Standard Oil Co. of Ohio. In addition, the lease provided for the lessee to have the right to remove certain fixtures belonging to the lessee, including storage tanks and station equipment, upon the expiration of the lease. Petitioner pays the taxes on the land and the lessee pays them on the building. Petitioner also carries liability insurance on the filling station for protective purposes.

In 1956, and in prior years, petitioner held the farm property, subsequently condemned, primarily as rental income-producing property.

In 1958 petitioner held the urban gasoline station property primarily as rental income-producing property.

In his notice of deficiency dated June 1, 1962, respondent gave the following explanation of his adjustments:

In Schedule D, of your amended income tax return, for the taxable year ended December 31, 1957, you reported a profit of $94,011.22 on the sale of a portion of your farm and the receipt of severance damages to the portion not taken by the railroad. This gain was considered by you to have been nontaxable since you had invested $112,500.00 of the proceeds in property located at 55th and Woodland in Cleveland, Ohio. None of the profit was taken into consideration in computing gross income on your amended return. It was held that the profit as corrected, $94,010.22 on the sale of a portion of your farm and for severance damages received from the Cleveland and Pittsburgh Railroad Company, should be taken into consideration in computing gross income to the extent of 50% thereof, or $47,005.11. It is further held that the investment of $112,500.00 in property located at 55th and Woodland in Cleveland, Ohio, does not bring the transaction within the scope of section 1033 of the 1954 Internal Revenue Code, since the property acquired is not similar or related in service or use to the property converted.

## OPINION

Again we must consider an issue which has been litigated often, and with varying results and rationale.[2] See *Steuart Brothers* v. *Commissioner*, 261 F. 2d 580 (C.A. 4, 1958), reversing 29 T.C. 372 (1957); *McCaffrey* v. *Commissioner*, 275 F. 2d 27 (C.A. 3, 1960), affirming 31 T.C. 505 (1958); *Loco Realty Co.* v. *Commissioner*, 306 F. 2d 207 (C.A. 8, 1962), reversing 35 T.C. 1059 (1961); *Liant Record, Inc.* v. *Commissioner*, 303 F. 2d 326 (C.A. 2, 1962), reversing 36 T.C. 224 (1961); *Pohn* v. *Commissioner*, 309 F. 2d 427 (C.A. 7, 1962), reversing a Memorandum Opinion of this Court; *Clifton Investment Co.* v. *Commissioner*, 312 F. 2d 719 (C.A. 6, 1963), affirming 36 T.C. 569 (1961); *Capitol Motor Car Co.* v. *Commissioner*, 314 F. 2d 469 (C.A. 6, 1963), reversing a Memorandum Opinion of this Court; and *Filippini* v. *United States*, 318 F. 2d 841 (C.A. 9, 1964). Indeed, the issue has suffered from too many different "tests" and an acute case of hardening of categories.

---

[2] SEC. 1033. INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

    \*       \*       \*       \*       \*       \*       \*

(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.—Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) NONRECOGNITION OF GAIN.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock.

All of these cases, except *Filippini*, are discussed in our opinion in *S. E. Ponticos, Inc.*, 40 T.C. 60 (1963), and we will not repeat that process here. Suffice it to say that the Court of Appeals for the Sixth Circuit reversed us in the *Ponticos* case (338 F. 2d 477) on November 25, 1964. In that case, when an industrial warehouse owned by the taxpayer was taken by the city of Cincinnati under threat of condemnation, the proceeds were reinvested in residential apartments. With three judges dissenting we held that the taxpayer had "reestablished itself in a business position that varies materially from its former position," and thus concluded that the residential apartment property was not "similar or related in service or use" to the warehouse. The Court of Appeals reversed on the authority of its prior decision in *Capitol Motor Car Co.* v. *Commissioner, supra*, in which it had held that a motel constructed by the taxpayer's lessee was "property similar or related in service or use" to condemned rental commercial property held for investment purposes. Its decision in the *Clifton Investment Co.* case was distinguished from *Ponticos* on its facts because of the "substantial difference in the services provided in the management and operation of a hotel in New York City and the rental of apartments in the apartment house owned by the taxpayer." The Court of Appeals further stated:

We are not willing to hold that a taxpayer who is compelled to sell, under threat of condemnation, a downtown commercial building from which it received rentals, and invests the proceeds in an apartment house, must lose the benefits of the statute merely because it hires a janitor to render services essential to apartment house maintenance and provides a swimming pool and other attractions customary in a modern apartment house which are not customary in a downtown commercial building.

As said by Judge Shackelford Miller, Jr., in his concurring opinion in Clifton Investment Co. v. Commissioner, supra:

"[T]he statute was not intended to penalize but to protect persons whose property may be taken on condemnation and, accordingly, should be construed liberally." 312 F. 2d at 723.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

We find no substantial difference between the relationship of the taxpayer as lessor of the converted property and lessor of apartments in the replacement property.

While the Court of Appeals for the Sixth Circuit did not overrule *Clifton Investment Co.*, the sweeping impact of its *Ponticos* opinion, coupled with what it said in *Capitol Motor Car Co.*, leaves little doubt in our minds that, as a practical matter, the rationale of *Clifton Investment Co.* has been abandoned by that court.

Although expressed differently, the following comments of the Court of Appeals for the Ninth Circuit in *Filippini* v. *United States, supra* at 844, are pertinent:

The purpose of the statute is to relieve the taxpayer of unanticipated tax liability arising from involuntary condemnation of his property, by freeing him from such liability to the extent that he reestablishes his prior commitment of capital within the period provided by the statute. The statute is to be liberally construed to accomplish this purpose. * * *

It would be fatuous to suggest that the recent decisions applying this standard to taxpayer-lessors are wholly consistent in approach or result. All of them except McCaffrey agree that since the statute is intended to relieve the taxpayer, the question of whether the condemned and replacement investments are similar must be determined from the taxpayer's relationship to each.

The amount and kind of services rendered by the petitioners here to the tenants of the converted and replacement properties were negligible. As to both, they paid the taxes and insurance and collected the rent. They had no control over the business operations of the riding club, the racehorse owners, or the filling station. We are satisfied that both properties were held for *investment* purposes, even though respondent advances the unconvincing argument that petitioners were owner-users of the farm property and operated it as a business. As our findings of fact indicate, these were rental income-producing properties. Here, as in *Ponticos*, there is no substantial difference between the relationship and responsibilities of the petitioner as lessor of the converted property and as lessor of the replacement property. Under these circumstances we think the replacement property represents a reasonably similar continuation of the petitioner's prior commitment of capital and not a departure from it.

We have carefully considered our own opinion in the *Ponticos* case (40 T.C. 60) in the light of the views expressed by the Court of Appeals. We see no distinction, in principle, between *Ponticos* and the case now before us. Therefore, we have decided to follow the decision of the Court of Appeals. We hold for the petitioners. See *Capitol Motor Car Co.* v. *Commissioner, supra;* and *Steuart Brothers* v. *Commissioner, supra.*

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

DRENNEN, *J.*, dissenting: I respectfully dissent.

First, in my opinion, the evidentiary facts related in the majority opinion do not justify its conclusion that in 1956 petitioner held the farm property primarily as rental income-producing property. The facts stated indicate to me that the farm property was acquired and held by petitioners primarily for appreciation in value with a view to selling it at a profit, and that the rental received from the riding club and the livery or stable fees received from several horseowners at the nearby racetrack were merely incidental. Petitioners bought the

property "realizing that because of industrial expansion in that area the property would probably increase in value." They apparently collected as rent from the riding club only such amounts as the club could afford to pay, the gross income of the farm being only $1,995 in 1956 despite a rental agreement which called for $400 rental per month; and in addition petitioners made all necessary repairs and paid the taxes, insurance, and utilities.

Absent at least the fact that both the original property and the replacement property were held primarily for the production of rental income, I find no similarity or relationship in service or use between the converted property and the replacement property here involved which would bring the situation within the exception to the general rule contained in subparagraph (A) of section 1033(a)(3). Nor do I think *S. E. Ponticos, Inc.* v. *Commissioner*, 338 F. 2d 477 (C.A. 6, 1964), or any of the other cases cited and relied on by the majority opinion require a different conclusion.

Secondly, even if both the farm property and the gas station property were held for the production of rental income, I think that alone is not sufficient to bring the transactions within the nonrecognition provisions of the above statute. In *Filippini* v. *United States*, 318 F. 2d 841 (C.A. 9, 1963), the court, while recognizing that the lessees' end use of the property, though relevant, is not controlling, stated:

It is equally clear that the fact that the taxpayer leases both properties is not alone enough to justify non-recognition of the gain, for both properties might be leased yet represent materially different investments to the taxpayer-lessor.

The test was there said to be whether the relationship of the taxpayer to the two investments was sufficiently similar to provide the continuity of investment that would justify nonrecognition of the gain. In my opinion, petitioners' investment of the condemnation award in 0.526 acres of urban property abutting hotel property he already owned, and which was leased for use as a gas station, was not such a continuation of his investment in the farm property, which he permitted a riding club of which he was a founder and member to use, as to bring it within either the terminology or intent of the statute, even though some rental income was derived from both properties. To hold otherwise would in my opinion extract all meaning from the words "similar or related in service or use" appearing in the statute. Here there was a change of investment into property not similar or related in service or use to the property converted, and the mere fact that it was precipitated by the condemnation does not, of itself, permit the nonrecognition of gain provided by the statute. *Filippini* v. *United States, supra.*

RAUM, TRAIN, and HOYT, *JJ.*, agree with this dissent.