ARNOLD L. SANTUCCI and VIDA L. SANTUCCI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Santucci v. Commissioner
Docket No. 6345-71.
United States Tax Court
T.C. Memo 1973-178; 1973 Tax Ct. Memo LEXIS 112; 32 T.C.M. (CCH) 840; T.C.M. (RIA) 73178; August 8, 1973, Filed *112 Petitioners operated a car wash on leased land. As a result of condemnation proceedings, they received a net award of $53,461.11 which was subsequently reinvested in a printing company. Held, since petitioners failed to provide the necessary details on the replacement, sec. 1033 is unavilable to them. Moreover, even if the proper foundation had been provided, no election under that section was made within the requisite period. Therefore, the gain realized upon the condemnation award must be recognized and the character was properly found to be sec. 1245 ordinary income. Leland H. Dibble, Jr., for the petitioners. Peter D. Bakutes, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $1,576.54 in the income tax of petitioners for the calendar year 1968. The sole issue for decision is whether petitioners' subsequent reinvestment of proceeds from a 2 condemnation award causes the gain realized on such sale to be deferred by reason of section 1033(a) (3)[1] when such gain had been recognized by petitioners on their return in the year of realization and no subsequent election under that section had been made within the requisite period required by that section. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, Arnold L. and Vida *115 L. Santucci, resided in Healdsburg, Calif., at the time their petition in the case was filed. They filed their joint individual income tax return for the taxable year 1968 with the district director of internal revenue, San Francisco, Calif.
From May 1963 to October 1968, petitioners operated a car wash on leased land in Richmond, Calif. On October 27, 1965, the San Francisco Bay Area Rapid Transit District filed a complaint in eminent domain to condemn the property upon which petitioners conducted their business. As a result of condemnation proceedings petitioners' business was closed in October 1968. The property of petitioners which was condemned consisted of tangible personal property upon which depreciation 3 had been claimed and allowed from 1963 through 1968 in the amount of $42,700. Petitioners received a net award, after payment of attorney fees, of $53,461.11 for their condemned property. The adjusted basis of the property was $43,398.51. Petitioners realized a gain upon this involuntary conversion of their property in the amount of $10,062.60. Following the receipt of these proceeds petitioners reinvested the funds in a printing company. No evidence was *116 presented as to the exact nature of this investment (i.e., whether stock purchase, partnership interest, proprietorship, etc.); nor was any evidence presented indicating exactly when the investment occurred or exactly how much of the award was in fact reinvested. In deference to petitioners, however, it does appear that the total award was reinvested and that at least a part of the investment was in depreciable personal property (printing presses and some related equipment). On their 1968 joint individual income tax return petitioners reported the gain realized on the involuntary conversion as long-term capital gain. In his statutory notice of deficiency, respondent determined that the gain realized on the involuntary conversion should be includable as ordinary income under section 1245(a) (1).Petitioners now contend that the gain should not be recognized by reason of section 1033. Nevertheless, no evidence of any election under that section was ever presented. Petitioners' returns have been prepared by a public accountant who has been 4 preparing their returns since 1950. This accountant was aware of the condemnation award. OPINION This case involves the interrelationship *117 of sections 1245 and 1033. Section 1245(a) (1) provides that upon a disposition of an item of "section 1245 property" the amount by which the lower of the recomputed basis of the property ($86,098.51) [2] or the amount realized ($53,461.11) exceeds the adjusted basis of the property ($43,398.51) shall be recognized as ordinary income. This section applies notwithstanding any other provision of subtitle A of the Internal Revenue Code of 1954. Section 1245(a) (3) (A) defines the term "section 1245 property" as including depreciable personal property, and petitioners' condemned property admittedly falls within that class. However, section 1245(b) (4) provides in part that if section 1245 property is disposed of and any gain (determined without regard to section 1245) is not recognized under *118 section 1033, then the amount of gain recognized under section 1245(a) (1) shall not exceed (i) the amount of gain recognized on such disposition (determined without regard to section 5 1245) plus (ii) the fair market value of any non-section 1245 property acquired which is qualifying property under section 1033. Therefore, unless the petitioners had made a proper election under section 1033 and such qualified reinvestment was in section 1245 property, respondent must prevail. In this instance petitioners have not established what portion of the condemnation award was reinvested in section 1245 property and thus cannot avail themselves of section 1245(b) (4). Even if the reinvestment had been in section 1245 property, petitioners would still have to meet the requirements of section 1033. Section 1033(a) (3) provides in part that if property is involuntarily converted into money as a result of condemnation proceedings, the gain, if any, shall be recognized at the election of the taxpayer only to the extent the amount realized on such conversion exceeds the cost of other property purchased *119 by the taxpayer which is "similar or related in service or use" to the property so converted. Section 1033(a) (3) (A). This "similar or related in service or use" test is a much narrower test than the "like kind" test of section 1031. The "like kind" test is also applied in the case of condemnation of real property held for productive use in trade or business or for investment. Section 1033(g). Here, however, the property condemned was personal rather than real. Petitioners seem 6 to have confused the two tests since they speak only in terms of "like kind." In this instance petitioners have replaced the converted property, a car wash, with a printing company. In determining whether the replacement property is "similar or related in service or use" to the property replaced, the burden is on petitioners to show the requisite relationship. Cf. Filippini v. United States, 318 F.2d 841, 845 (C.A. 9, 1963). As to the proper test to apply in maing this determination, the issue has been litigated often. See Harvey J. Johnson, 43 T.C. 736 (1965), for a listing *120 of the cases and discussion. Suffice it to say that in a situation involving an owner-operator of property, as we have here, this Court in the past has applied a "functional use" test whereby the end use of the replacement property had to be substantially similar to the replaced property. Cf. Thomas McCaffrey, Jr., 31 T.C. 505 (1958), affd. 275 F.2d 27 (C.A. 3, 1960). A different test is applied in the investor-lessor situation. See Johnson, supra.Here petitioners have failed to show that the replacement was "similar or related in service or use" to the replaced property. Since petitioners have made no attempt to show the requisite relationship other than by way of conclusionary statements, we are not compelled to go into the merits of the test applied. 7 Furthermore, even if the replacement property had been qualified property under section 1033, petitioners in this instance recognized the gain from the condemnation award in the year of realization. This inclusion in income of the gain in the year of realization is itself an election *121 not to apply section 1033(a) (3). Section 1.1033(a)-2(c) (2), Income Tax Regs.
If, however, a subsequent decision is made to make an election to apply section 1033(a) (3) after the filing of the return and the payment of the tax in the year of realization, the election must be made before the expiration of the period within which the converted property must be replaced and a claim for refund should be filed. Section 1.1033(a)-2(c) (2), Income Tax Regs.
At the time of the conversion in this case, the requisite period for making the election was one year after the close of the taxable year in which any part of the gain from the condemnation was first realized. Section 1033(a) (3) (B). [3] As we interpret section 1033(a) (3) (B) (ii) and section 1.1033(a)-2(c) (2) and (3), Income Tax Regs., the election must be made within this period. While an extension of the period for replacement may be obtained from the district 8 director, and upon a showing of reasonable cause such extension may be applied for after the close of the *122 time period if such application is made within a reasonable time thereafter, this possibility of extension applies only to the replacement period; the election must be made within the requisite period. If an election is to be made under section 1033(a) (3), all details in connection with the conversion and the replacement must be reported on the return. Section 1.1033(a)-2(c) (2), Income Tax Regs. As to the amount of detail, the proof ought to be sufficiently accurate to disclose the data necessary to an intelligent administration of these other provisions of the statute, i.e., what particular property was acquired, the date acquired, and the cost to the taxpayer paid by funds from the award. * * * [John J. Bliss, 27 B.T.A. 803, 806 (1933).] In this instance the requisite period for making an election ended on December 31, 1969. As of that date no election had been *123 made. In fact, the record indicates that petitioners considered section 1033 only after receipt of the statutory notice of deficiency. It is evident from the facts that the petitioners intended to recognize the gain from the award in 1968. Their return was prepared by a public accountant who had been preparing their returns since 1950 and he was aware of the condemnation award. The statutory notice of deficiency was not for a failure to recognize the gain but for claiming long-term capital gain treatment when the gain was properly section 1245 ordinary income. 9 Even if an election had been attempted, insufficient details of the replacement were presented by petitioners. No evidence was offered on the cost of the newly acquired property, the (dates) of acquisition, the purpose of such acquisition, or the exact nature or use of such property. It is clear from the foregoing that petitioners cannot prevail. 1.Petitioners have failed to show what part of the proceeds were reinvested in section 1245 property. 2. Even if the reinvestments were in section 1245 property, insufficient evidence was presented as to whether such property was "similar or related in service or *124 use" to the property condemned. 3. Even if the above requirements had been met, no election was made within the requisite period specified in section 1033(a) (3). Therefore, since section 1033 was not properly elected, the exception to section 1245(a) (1) found in section 1245(b) (4) is not available to petitioners. The respondent thus properly determined that the gain from the converted property was ordinary income under section 1245(a) (1). Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. The recomputed basis is determined by adding to the adjusted basis of the property ($43,398.51) the depreciation allowed, attributable to periods after December 31, 1961 ($42,700). Sec. 1245(a) (2)↩. 3. This is the applicable time period for dispositions occurring before December 31, 1969. Sec. 1.1033(a)-2(c) (3), Income Tax Regs.↩