Ben POHN and Estelle Pohn, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 13669.

United States Court of Appeals Seventh Circuit.

Oct. 19, 1962.

Howard R. Slater, Chicago, Ill., Donald A. Kahan, Chicago, Ill., for petitioners.

Louis F. Oberdorfer, Asst. Atty. Gen., Frank Goodman, Attorney, Tax Division, Lee A. Jackson, Melva M. Graney, Arthur E. Strout, Department of Justice, Washington, D. C., for respondent.

Before DUFFY, CASTLE and KILEY, Circuit Judges.

KILEY, Circuit Judge.

This is a petition by taxpayers to review a decision of the Tax Court sustaining a deficiency assessment of income taxes for the year 1954 on the ground that taxpayers were not entitled to the tax postponement benefit of § 1033(a) (3) (A) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1033(a) (3) (A).[1]

■ Taxpayers acquired a leasehold interest in vacant Chicago land in 1933. Lessor built a filling station on the property,[2] and taxpayers sublet the filling station. In 1948, taxpayers exercised their option to purchase the land. The property was condemned by the Chicago Park District in 1954 and the proceeds of the award invested in a one-fourth interest in Florida vacant real estate. Later this vacant property was leased for construction of apartments.

The question is whether the Florida property was "similar or related in service or use" to the converted Chicago property so as to qualify for the benefits of § 1033(a).

The Tax Court applied the "functional test" by comparing the end use to which the properties were devoted. It decided that the apartment building "service or use" was not "similar or related" to the filling station "service or use." Taxpayers contend this was not the right test

---

1. Section 1033(a) provides, in general, that gains resulting from the involuntary conversion of property are not immediately "recognized" for tax purposes if the requirements of the section are met. The provision immediately affecting the case at bar is subsection (3) (A), which reads as follows:

   "(A) *Nonrecognition of gain.*—If the taxpayer during the period specified * * * for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted * * * the gain shall be recognized only to the extent that the amount realized upon such conversion * * * exceeds the cost of such other property * * *."

2. Although the government's brief indicates that the taxpayers built the filling station, the record shows that the lessor built it under the terms of the lease.

and that since they used both properties for investment purposes, the "service or use" to them was "similar or related."

The question is new in this Circuit. It has, however, been considered in four Circuits:[3] Steuart Brothers, Inc. v. Commissioner, 4 Cir., 261 F.2d 580 (1958); McCaffrey v. Commissioner, 3 Cir., 275 F.2d 27 (1960); Liant Records, Inc. v. Commissioner, 2 Cir., 303 F.2d 326 (1962); Loco Realty Co. v. Commissioner, 8 Cir., 306 F.2d 207 (1962).[4] In Loco, the Eighth Circuit presents an exhaustive survey of all the pertinent cases in the Tax Court and the District Courts, as well as the Courts of Appeals.

In Steuart (Fourth Circuit) the converted property was vacant but was committed to leases for warehouses, a retail grocery store, offices and parking space. The replacement property consisted of an automobile sales room, a parking and used car lot, garages, and a service station. The court there, in reversing the Tax Court's decision against the taxpayer, set up a double standard to test the availability of the benefit of the section to a taxpayer: if the taxpayer actually used the converted property, that use must be compared to the use of the replacement property and the comparisons must show a similarity; if the taxpayer did not himself use the property before and after conversion, a comparison of investments before and after should show a similarity. The court concluded that taxpayer's real estate before and after condemnation was held by it for investment purposes and the proceeds of the condemnation invested in real estate of the same general class.[5]

In McCaffrey (Third Circuit), the converted property was used solely as a public parking lot and the replacement property for warehouse space, with incidental private parking. The court did not dispute taxpayer's contention that he held the properties for investment only. In affirming the Tax Court's decision for the Commissioner, the Third Circuit decided that the properties were not similar "physically or otherwise," and were not similar in class since both were not industrial. Therefore, the court concluded, the properties were not "similar or related in service or use."[6]

In Liant (Second Circuit), the converted property was an office building and it was replaced by three apartment buildings. Taxpayers held the properties for rental income, and did not occupy them. The court pointed out the intention of Congress to postpone the tax on the gain of an involuntary conversion. But the court said that conversion should not give the taxpayer an opportunity to "alter the nature of his investment tax free." The question under § 1033(a), it said, was whether the replacement and converted property were "similar or related in service or use."

The court concluded that since Congress intended a taxpayer-owner to maintain "continuity of interest" and not to alter the nature of his investment tax free "it is the service or use which the properties have to the taxpayer-owner that is relevant."[7] It set forth a "single test to be applied to both users and investors, i. e., a comparison of the services or uses of the original and replacement properties *to the taxpayer-owner*."[8] In

3. The question is pending in the Sixth Circuit, Clifton Investment Co. v. Commissioner, 36 T.C. 569 (1961); and in the Ninth Circuit, Filippini v. United States, 200 F.Supp. 286 (N.D.Cal. 1961).

4. There is a basic difference of opinion between the Third Circuit and the Second, Fourth and Eighth Circuits, and among the latter three there are shades of difference in the tests applied.

5. And the court said "it is manifest" that this conclusion served the purpose of the statute.

6. The court applied the functional test as relating only to "the 'purpose' or nature of the properties themselves," and rejected the test argued for by the taxpayer, that "the nonrecognition of gain provisions * * * are available to him * * * because both properties were used by him for the same 'use'—the production of rental income."

7. 303 F.2d 326, at 328.

8. Id., at 329.

applying the test the court said there must be a comparison of, among other things, the extent and type of the lessor's management activity, amount and kind of services he rendered to tenants and the nature of his business risks connected with the properties. The court buttressed its conclusion by a comparison of the language of § 1033(a), involuntary conversion, and § 1031, voluntary exchange of "property held * * * for investment" for property of a "like kind." Both sections have tax postponement benefits. The "like kind" qualification, said the court, has received a much broader interpretation than "similar or related in service or use." The court added that in 1958, Congress amended § 1033(a) and made the "like kind" qualification applicable to condemnation of real estate "held * * * for investment."[9] It reversed the Tax Court's decision against the taxpayer.

In Loco (Eighth Circuit), the converted property was light manufacturing building and the replacement property office and warehouse, both held for investment. The Tax Court's decision against the taxpayer-owner was reversed. The court avoided the McCaffrey "end use" by tenants test, as well as an extreme statement of the Steuart and Liant doctrine that both properties need only qualify as investments. The test used by the court was made up of the tests in the Steuart and Liant cases: it is sufficient if in addition to the "leasehold characteristics" there is a reasonable similarity to the properties themselves.

■ We think the Liant decision of the Second Circuit is most persuasive. Its view is apparently the one Congress adopted in 1958 in its amendment of § 1033(a). It is the "continuity of interest" which is the key factor. Presumably the taxpayers here would have continued their lessor interest in the converted property had it not been interrupted by the condemnation. In view of the involuntary conversion. Congress intended to aid such taxpayers by permitting them to place themselves in a "similar or related" position to that held when the property was converted and to continue thereby the interest they held when the condemnation took place. At that time the "service or use" to taxpayers was production of rental income. The "service or use" of the replacement property to them is "similar or related." The replacement did not "alter the nature" of their investment.

For the reasons given, the decision of the Tax Court is Reversed.[10]

9. Section 1033 was amended in 1958 by the addition of subsection (g). The amendment, which was prospective only, reads as follows:

"For purposes of subsection (a), if real property * * * held for productive use in trade or business or for investment is (as the result of its seizure, requisition, or condemnation, or threat or imminence thereof) compulsorily or involuntarily converted, property of a like kind to be held either for productive use in trade or business or for investment shall be treated as property similar or related in service or use to the property so converted."

The Senate Finance Committee made the following comments on the amended section:

As a result your committee has added a new subsection to the involuntary conversion (sec. 1033) provision of present law. In this new subsection it has added the "like kind" test of the voluntary exchange of business property rule of present law as an alternative in the case of involuntary conversions for the rule requiring the substitution of property "similar or related in service or use." The "like kind" rule in this case applies, however, only in the case of real property, does not include inventory or property held primarily for sale, and is limited to seizures, requisitions, condemnations, or the threat or imminence thereof. 3 U.S.Code Cong. & Adm.News pp. 4861–4862 (1958).

10. The Tax Court found that taxpayers had nothing to do with operation of either improvement and did not see the Chicago property for many years when they owned it. This obviates any necessity of remanding for testimony of the comparative purposes set out in Liant.