Alan S. DAVIS et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 74–75.

United States District Court, D. Hawaii.

April 9, 1976.

---

Clinton R. Ashford, and Wayne Nasser, Ashford & Wriston, Honolulu, Hawaii, for plaintiffs.

Harold M. Fong, U. S. Atty., Honolulu, Hawaii, for defendant. Robert S. Livingston, U. S. Dept. of Justice, Washington, D. C.

## DECISION

WONG, District Judge.

Plaintiffs, as trustees of the estate of James Campbell, owned and leased real property at various locations in the State of Hawaii. The real property consisted of lands zoned, leased and used for agricultural purposes in the western part of Oahu. Portions of these leased lands were condemned by the State of Hawaii for the construction of highways. Plaintiffs realized a net amount of more than $260,000 during the years 1966, 1968 and 1971 as a result of the condemnations.

In 1970, plaintiffs further realized a net amount of approximately $2,700 from the condemnation of some 1.3 acres of unleased and unimproved land also zoned for agricultural use and received $5,000 from the condemnation of a fishing area. An additional $25,000 was received by them in 1971 as proceeds from condemnation of the fishery.

The plaintiffs' leased lands condemned for highway purposes had been utilized mostly for sugar cane cultivation and livestock grazing. The proceeds from the condemnation of the lands and fishery area were used by them in the regular course of the Campbell Estate's business operations.

In 1972, however, plaintiffs expended approximately $335,800 in permanent improvements to other property which they owned, located at the Campbell Industrial Park. These improvements included the addition of a storm drainage and water system, the grading of the land and the excavation of a roadway. The lots at Campbell Industrial Park were not designed to be leased for agricultural purposes but rather to be leased to large-scale manufacturers, raw material fabricators, heavy equipment dealers, and bulk warehousing operators.

Plaintiffs in November 1972 formally notified the Internal Revenue Service that the condemnation proceeds had been reinvested in the Campbell Industrial Park. The Service informed plaintiffs that the investment in improvements on land already owned by plaintiffs did not qualify as replacement property under Section 1033 of the Internal Revenue Code (IRC). Plaintiffs thereupon paid the additional income taxes, plus interest due, in the amount of $106,050.24 for the years 1966, 1968, 1970 and 1971. Plaintiffs filed timely claims for refunds and subsequently instituted

this suit following the administrative denial of the refund claims.

Section 1033 of the Internal Revenue Code and its predecessor sections under prior revenue laws were enacted to grant a taxpayer relief from taxation when, within a specified period or within any period agreed to by the Internal Revenue Service, he purchases real property of like kind or property similar in service or use to the condemned real property. More specifically, § 1033(a)(3)(A) relates to the qualification for non-recognition by replacement of "property similar or related in service or use" if the taxpayer "purchases" such property. Section 1033(g) contains a special rule broadening the scope of the qualification so that "like kind" property "to be held either for productive use in trade or business or for investment shall be treated as property similar or related in service or use to the property so converted."

■ Whether a replacement qualifies for non-recognition either under § 1033(a)(3)(A) or under § 1033(g), it must first meet the requirement of having been acquired by a "purchase." Here the taxpayers conceded they did not "purchase" another piece of land in replacement of the lands condemned, as is the usual case of a replacement. Rather, they "expended" moneys for improvements on other lands owned by them. In *Dettmers v. Commissioner*, 430 F.2d 1019 (6th Cir. 1970), the court traced the legislative history of IRC § 1033(a)(3). The court indicated that when the requirement that proceeds from the involuntary conversion be "expended" was replaced by the requirement of timely "purchase," no substantive change in the nature of the relief afforded under the statute was intended. The court also expressed the belief the reason the language was changed from "acquisition" to "purchases" was that "Congress wanted to specify that the acquisition be by purchase rather than, for example, by gift or devise." *Id.* at 1022. Following this reasoning, I am satisfied that the expenditures made by the taxpayers met the "purchase" requirement.

I turn next to the issue of whether taxpayers may "purchase" improvements made on land already owned by them to qualify under either § 1033(a)(3) or § 1033(g). Under the latter, the property acquired must be of a like kind. For a definition of "like kind," Reg. § 1.1033(g)–1(a) refers to Reg. § 1.1031(a)–1(b), which provides in pertinent part:

As used in § 1031(a), the words, "like kind" have reference to the nature or character of the property and not to its grade or quality. One kind or class of property may not, under that section, be exchanged for property of a different kind or class. The fact that any real estate involved is improved or unimproved is not material, for that fact relates only to the grade or quality of the property and not to its kind or class.

In making a determination as to whether a replacement of "like kind" property has been made with the condemnation proceeds, one approach may be definitional; that is, whether improvements of the type "purchased" by the taxpayers constitute "real property." If so, perhaps I need look no further, since exchange of real property for real property would be a "like kind" replacement. As the court stated in *Commissioner v. Crichton*, 122 F.2d 181, 182 (2d Cir. 1941), "[T]he distinction intended and made by the statute is the broad one between classes and characters of properties, for instance, between real and personal property." *See Fleming v. Campbell*, 205 F.2d 549 (5th Cir. 1953).

Defendant relies principally on Rev. Rul. 67–255, 1967–2, Cum.Bull. 271. In that case, the Service ruled that the building, storm drains, water systems and roads constructed on land already owned by the taxpayer did not qualify as replacement property under § 1033(g) as being of a like kind to the land involuntarily converted. The expressed rationale was that:

In considering the "like kind" test, although the term "real estate" is often used to embrace land and improve-

ments thereon, land and improvements are by nature not alike merely because one term is used to describe both. Land is not of the same nature or character as a building, or a storm drain, or a water system, or a road.

In Rev.Rul. 73–120, 1973–1, Cum.Bull. 369, the Service held that replacement of the fee simple interest in a utility company's water plant, together with appurtenant pipelines, mains, manholes, and accessory installations with a fee simple interest in an apartment complex, qualified as like-kind replacement. The ruling does not indicate whether or not the fee simple interest in the apartment complex included the land, which I surmise was probably the case, unless the apartment complex was a condominium constructed on leasehold property. In any event, the Service has either approved an "improvements for improvements" replacement or "land . and improvements for improvements" replacement. If the former, then it is plain that it is consistent in holding that improvements cannot be equated to land as "real property." If the latter, which appears more likely, then it has taken an inconsistent position.

◼ I need not decide this case on the basis of whether or not the label "real property" attaches to the improvements made by the taxpayers, or whether such improvements are equivalent to land once the label attaches. Instead, I look to the purpose of the statute and whether or not the improvements made by taxpayers "re-establishes [their] prior commitment of capital." *Filippini v. U. S.*, 318 F.2d 841, 844 (9th Cir. 1963). In affirming the decision of the lower court, the Ninth Circuit declared:

> The statute is to be liberally construed to accomplish this purpose. On the other hand, it was not intended to confer a gratuitous benefit upon the taxpayer by permitting him to utilize the involuntary interruption in the continuity of his investment to alter the nature of that investment tax free.

The lower court, *Filippini v. U. S.*, 200 F.Supp. 286 (N.D.Cal.1961), after con-

sidering various factors found that the replacement property, which consisted of a single commercial office building erected upon six city lots, was not of the "same general class" as the property condemned. The condemned property consisted of a single parcel of rural property. The major portion of the parcel was farm land devoted to an agricultural use and the remaining portion was used by a tenant for the commercial purpose of operating a drive-in theater. The court therefore held that the replacement property was not property "similar or related in service or use" to the original property within the meaning of 1939 IRC § 112(f)(3)(A), the predecessor section to IRC § 1033(a)(3)(A). It observed, however, that the intent of Congress was "to provide a rule broad enough to encompass the type of replacement involved in this case . . . ." 200 F.Supp. at 294. It pointed out that under the "like kind" test, "it appears that the replacement of one investment property for another investment property, without regard to any dissimilarity of characteristics or uses, would be allowable." *Id.* However, because the amended § 1033(g) was made expressly applicable only to the involuntary conversions of real estate occurring after the date of taxpayer's conversion, the taxpayer could not benefit from the new amendment.

◼ I find that the improvements made by the taxpayers in this case in connection with the leasing of the Campbell Industrial lots were not of the "same general class" as the land and improvements used for agricultural purposes. Thus, it does not qualify under § 1033(a)(3)(A) as property similar or related in service or use to the property converted.

I do find, however, that the improvements made by the taxpayers represent a substantial continuation of their prior commitment of capital and that these improvements qualify for non-recognition of gain as real property of "like kind" to the property condemned as required by § 1033(g).

Plaintiffs, as prevailing party herein, will prepare findings of fact and conclusions of law in conformity with this Decision, and pursuant to the Rules of this Court, and Fed.R.Civ.P. 52.