589 F.2d 446
 79-1 USTC P 9142
 Alan S. DAVIS, M. L. Randolph, Fred E. Trotter and H. C.
Eichelberger, Trustees under the Will of the
Estate of James Campbell, Deceased,
Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant.
 No. 76-3433.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 2, 1979.
 
 Clinton R. Ashford, Wayne P. Nasser, argued, Honolulu, Hawaii, for plaintiffs-appellees.
 Gilbert E. Andrews, Atty., Gary R. Allen, argued, Washington, D. C., for the U. S.
 Appeal from the United States District Court for the District of Hawaii.
 Before CHAMBERS, WALLACE and ANDERSON, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 The government appeals the district court's judgment granting relief under the nonrecognition provisions of section 1033 of the Internal Revenue Code of 1954 and awarding an income tax refund. Although we rest our decision on a ground different from that relied upon by the district court, we affirm the judgment.
 
 
 2
 * The trustees of the estate of James Campbell (taxpayer) have been in the business of leasing trust owned land since 1901. Taxpayer's holdings included both industrial property being developed for lease, and improved agricultural land leased for sugar cane cultivation and livestock grazing. Taxpayer also owned a sea fishery adjacent to its agricultural property.
 
 
 3
 The state of Hawaii condemned taxpayer's sea fishery and various portions of taxpayer's agricultural property. Taxpayer used the condemnation proceeds to build a storm drainage and water system, grade land, and excavate a roadway in Campbell Industrial Park (the Park), trust owned land taxpayer was developing for lease to industrial concerns.
 
 
 4
 The Internal Revenue Service did not consider these improvements to be replacement property under section 1033 and informed taxpayer that taxes would have to be paid on the condemnation proceeds. Taxpayer paid the additional taxes plus interest, in the amount of $106,050, filed a timely claim for refund, and upon denial of the claim, instituted this suit.
 
 
 5
 The district judge granted a refund. 411 F.Supp. 964 (D.Hawaii 1976). He found that, because Hawaii's historically plantation economy had changed to a mixed industrial, commercial, resort, and agricultural economy, little agricultural land in Hawaii was available for purchase, and no prospective agricultural tenants could be found who would be willing to pay the rent required to allow taxpayer a reasonable return on an investment in newly acquired agricultural land. Additionally, because Hawaii had a declared public policy of absorbing ownership of Hawaiian sea fisheries into the public domain, it was virtually impossible for taxpayer to reinvest in agricultural land with an adjacent sea fishery. The court further found that the risk attendant to taxpayer's investment in the Park was no different from the risk which would have been undertaken had taxpayer reinvested the condemnation proceeds in other agricultural property, that the cost to taxpayer of managing the industrial property was substantially the same as had been the cost of managing the condemned property, and that, since taxpayer did not provide substantial management services to either the industrial or agricultural tenants, the services provided at the Park were the same as those that taxpayer had provided to the agricultural tenants.
 
 
 6
 As a result, the district court held that, by investing the condemnation proceeds in the Park, taxpayer had maintained a substantial continuation of its prior commitment of capital. Believing, however, that the improvements were not of the "same general class" as the condemned agricultural land, the court held that the improvements did not qualify for nonrecognition of gain as "property similar or related in service or use" within the meaning of section 1033(a)(3)(A).[1] Rather, the court concluded that the improvements qualified for nonrecognition as property of "like kind" within the meaning of section 1033(g)(1),[2] and therefore granted the refund.
 
 II
 
 7
 Pursuant to section 1033, gain realized because of the condemnation or other involuntary conversion of property is not recognized if the converted property is replaced by similar property within a specified time. Replacement property may qualify either under subsection (a) as property "similar or related in service or use," or under subsection (g) as property of "like kind." We hold that given taxpayer's substantial continuation of its prior commitment of capital, the district court erred in concluding that improvements to the Park were not similar or related in service or use to its prior investment in agricultural land. Since we find that taxpayer qualifies for relief under subsection (a), we do not reach the question of whether the district court correctly granted relief under subsection (g).[3]
 
 
 8
 While some investments may fall within the purview of both subsection (a) and subsection (g), the inquiries to determine the applicability of each subsection differ. Subsection (g) directs attention to the nature or character of the condemned property and its replacement.[4] Under subsection (a), however, we look to the taxpayer's relationship to his old and new investments.[5] Long ago, we established the proper analysis for determining the applicability of subsection (a).
 
 
 9
 The test is a practical one. The trier of fact must determine from All the circumstances whether the taxpayer has achieved a sufficient continuity of investment to justify non-recognition of the gain, or whether the differences in the relationship of the taxpayer to the two investments are such as to compel the conclusion that he has taken advantage of the condemnation to alter the nature of his investment for his own purposes.
 
 
 10
 Filippini v. United States, 318 F.2d 841, 844-45 (9th Cir.) (discussing subsection (a)'s identically worded predecessor in the 1939 code) (emphasis in original) (footnote omitted), Cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 165 (1963), Aff'g 200 F.Supp. 286 (N.D.Cal.1961).
 
 
 11
 Filippini requires that we consider a broad range of factors in determining whether a taxpayer has maintained a sufficient continuity of investment. When the taxpayer holds both the condemned and the replacement properties for the production of rental income, the inquiry specifically includes, among other things, " 'the extent and type of the lessor's management activity, the amount and kind of services rendered by him to the tenants, and the nature of his business risks connected with the properties.' " Filippini v. United States, supra, 318 F.2d at 845 (quoting Liant Record, Inc. v. Commissioner of Internal Revenue, 303 F.2d 326, 329 (2d Cir. 1962) ). We must also consider the more general factors that influence the choice of any investment the character of the particular properties and the market of which each is a part. Filippini v. United States, supra, 318 F.2d at 845.
 
 
 12
 Applying this test to the facts in this case, we believe that taxpayer is entitled to relief under subsection (a). "(W)hether the acquired property is 'similar or related in service or use' to the condemned property turns upon whether in all the circumstances it represents a substantial continuation of the taxpayer's prior commitment of capital, or a departure from it." Id. at 844. The district judge found "that the improvements made by the (taxpayer) represent a substantial continuation of (its) prior commitment of capital." We agree. Although taxpayer invested the condemnation proceeds into its already owned industrial park rather than into agricultural land, taxpayer's relationship to its investments remained essentially the same. The district court found, and the government does not dispute, that the risk attendant to taxpayer's investment in the industrial park was not greater than the risk concomitant with an investment in agricultural land. Taxpayer's management also remained substantially the same, without great variance in cost or service. Moreover, given the change in the Hawaiian economy, reinvestment in agricultural property was unreasonable, and purchase of another sea fishery was virtually impossible. Thus, the district court did not err in concluding that taxpayer had substantially maintained a continuation of its prior commitment of capital.
 
 
 13
 The government argues, however, that our decision in Filippini requires that the replacement property be of the "same general class" as the condemned property before it can qualify under subsection (a). In Filippini, the taxpayer purchased urban property and erected an office building using money received from the condemnation of substantially rural property. The district court compared the characteristics and uses of the two properties and, after finding that the properties were dissimilar and not even of the "same general class," refused to allow nonrecognition of the taxpayer's gain. Filippini v. United States, 200 F.Supp. 286, 294-95 (N.D.Cal.1961). While we affirmed the district court's judgment, we specifically rejected resolution of the issue by simplistic talismanic rules. Instead we adopted the test referred to earlier which compares all of the circumstances surrounding the two investments. That taxpayer's condemned agricultural land is not of the "same general class" as its improvements to the Park is thus not determinative. Rather, taxpayer's relationship to the two investments controls.
 
 
 14
 The government also argues that the district court's determination regarding the continuation of taxpayer's prior commitment of capital is irrelevant because it pertains to taxpayer's relationship to the industrial park and not to the replacement property itself, i. e., the grading, excavation and other improvements to the Park. We reject the government's narrow construction of our test. The improvements to the Park have significance only as part of the Park, and their relationship to the taxpayer necessarily is a function of the investment in the industrial park as a whole. We therefore conclude that the district court's inquiry was not misdirected. As we have stated before, the purpose of section 1033 "is to relieve the taxpayer of unanticipated tax liability arising from involuntary conversion of his property . . . . The statute is to be liberally construed to accomplish this purpose." Filippini v. United States, supra, 318 F.2d at 844; See also S.E. Ponticos, Inc. v. Commissioner of Internal Revenue, 338 F.2d 477, 479 (6th Cir. 1964); Loco Realty Co. v. Commissioner of Internal Revenue, 306 F.2d 207, 215 (8th Cir. 1962).
 
 
 15
 The record amply demonstrates that taxpayer's investment of the condemnation proceeds represents a sufficient continuity of taxpayer's original investment. The improvements were therefore similar or related in service or use to the prior investment, and taxpayer is entitled to relief under section 1033(a). On that basis, we affirm the judgment.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 I.R.C. § 1033(a)(3)(A) provided in part:
 (a) General rule. If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted
 (3) Conversion into money where disposition after 1950. Into money or into property not similar or related in service or use to the converted property . . . the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:
 (A) Nonrecognition of gain. If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property or such stock.
 With minor modifications not relevant here, this section has been redesignated as section 1033(a)(2)(A) by the Tax Reform Act of 1976, Pub.L. No. 94-455, § 1901(a)(128)(A), (B), 90 Stat. 1520 (1976).
 
 
 [2]
 I.R.C. § 1033(g)(1) provided:
 (g) Condemnation of real property held for productive use in trade or business or for investment.
 (1) Special rule. For purposes of subsection (a), if real property (not including stock in trade or other property held primarily for sale) held for productive use in trade or business or for investment is (as the result of its seizure, requisition, or condemnation, or threat or imminence thereof) compulsorily or involuntarily converted, property of a like kind to be held either for productive use in trade or business or for investment shall be treated as property similar or related in service or use to the property so converted.
 This section has been redesignated as section 1033(f)(1) by the Tax Reform Act of 1976, Pub.L. No. 94-455, § 1901(a)(128)(C), 90 Stat. 1520 (1976).
 
 
 [3]
 Even if we disagree with the district judge's reasoning, we may nevertheless affirm his disposition "on any ground squarely presented on the record." Grosz v. Andrus, 556 F.2d 972, 974 n.3 (9th Cir. 1977); M.O.S. Corp. v. John I. Haas Co., 375 F.2d 614, 617 (9th Cir. 1967); See Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957) (per curiam)
 
 
 [4]
 Treasury Regulations specify that "like kind" property, as the term is used in section 1033(g), has
 reference to the nature or character of the property and not to its grade or quality. One kind or class of property may not . . . be exchanged for property of a different kind or class. The fact that any real estate involved is improved or unimproved is not material, for that fact relates only to the grade or quality of the property and not to its kind or class.
 Treas. Reg. § 1.1031(a)-1(b) (1976), as made applicable to section 1033(g) by Treas. Reg. § 1.1033(g)-1(a) (1976).
 
 
 [5]
 The Internal Revenue Service originally took the position that the statutory phrase, "similar or related in service or use" meant that the property acquired had to have a close "functional" similarity to the property converted. Under this test the physical characteristics and the end use of the converted and replacement properties had to be similar. See Loco Realty Co. v. Commissioner of Internal Revenue, 306 F.2d 207, 211-14 (8th Cir. 1962). We and several other courts of appeals, however, rejected this approach. Filippini v. United States, 318 F.2d 841, 844-45 (9th Cir.), Cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 165 (1963); Clifton Inv. Co. v. Commissioner of Internal Revenue, 312 F.2d 719, 721-22 (6th Cir.), Cert. denied, 373 U.S. 921 (1963); Pohn v. Commissioner of Internal Revenue, 309 F.2d 427, 429-30 (7th Cir. 1962); Loco Realty Co. v. Commissioner of Internal Revenue, supra, 306 F.2d at 215; Liant Record, Inc. v. Commissioner of Internal Revenue, 303 F.2d 326, 328-29 (2d Cir. 1962); Steuart Bros., Inc. v. Commissioner of Internal Revenue, 261 F.2d 580, 584 (4th Cir. 1958). The Service therefore reconsidered its position in regard to property held for investment, and now focuses attention on "the similarity in the relationship of the services or uses which the original and replacement properties have to the taxpayer-owner." Rev. Rul. 64-237, 1964-2 C.B. 319, 320. The tax court also adopted this test. See Wheeler v. Commissioner of Internal Revenue, 58 T.C. 459, 463 (1972); Johnson v. Commissioner of Internal Revenue, 43 T.C. 736, 741 (1965)
 Since the tests under section 1033(a) and section 1033(g) differ, replacement property may qualify under the former but not the latter. For example, in Rev. Rul. 71-41, 1971-1 C.B. 223, the Service found that, while the gas station that the taxpayer constructed and held for rental purposes did not constitute property of "like kind" to the condemned land and warehouse held for rental purposes, the gas station was sufficiently similar to the condemned property to be considered "similar or related in service or use."