Filed 2/11/25

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| AHMAD SKOUTI et al., | C100135 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2020-00278768-CU-MC-GDS) |
| v. | |
| FRANCHISE TAX BOARD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge. Affirmed.

Fennemore Dowling Aaron, J. Jackson Waste and Joseph J. Doerr for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Tamar Pachter, Assistant Attorney General, Craig D. Rust, Jennifer T. Henderson and Lauren E. Freeman, Deputy Attorneys General, for Defendant and Respondent.

1

Plaintiffs Ahmad Skouti and Faten M. Kour purchased a citrus orchard with proceeds from a jury award for the destruction of their grapevines. Internal Revenue Code section 1033 (26 U.S.C. § 1033 (section 1033)) permits nonrecognition of gain from involuntary conversions of property, like the one here, if the taxpayer "purchases other property similar or related in service or use to the property so converted." (§ 1033, subd. (a)(2)(A).) The Franchise Tax Board (Board) determined plaintiffs cannot benefit from section 1033 because the citrus orchard was not similar or related in service to the converted grapevines. After exhausting administrative remedies, plaintiffs filed a complaint in the trial court for refund of taxes against the Board. The parties filed competing motions for summary judgment and the trial court granted the Board's motion and denied plaintiffs' motion. On appeal, plaintiffs contend the trial court erred because their purchase of citrus orchards was sufficiently similar under section 1033 to permit nonrecognition of the gain from the involuntarily converted grapevines. We affirm, concluding the properties are not similar under section 1033 because plaintiffs replaced agricultural fixtures with property including both agricultural fixtures and land.

FACTUAL AND PROCEDURAL BACKGROUND

The parties' stipulation of undisputed material facts for the summary judgment motions stated plaintiffs are grape farmers with about 1,000 acres of grapevines. In 2002, they sprayed their vineyards with a mixture of chemicals their crop advisor recommended. These chemicals killed many of the grapes and injured or killed nearly half of plaintiffs' vines. Plaintiffs sued the crop advisor and a jury awarded them over $7.5 million in damages. This award consisted of $3,260,166 for "[d]amage to [r]aisin [c]rop" between 2002 and 2004; $160,933 for "[c]ost to [r]epair [v]ines" between 2002 and 2004; $467,629 for "[l]ost [p]rofit from [g]reen [g]rape [p]urchases" between 2002 and 2004; and $3,666,605 for "future lost profits." The lost profits from 2002 through 2004 was based on the estimated drop in vine production from the damage, and the future lost profits were based on the time it would take new vines to grow to grape producing

2

maturity. Specifically, the parties' stipulated facts stated plaintiffs' expert at trial calculated future losses based on the "planting of seedlings (aka rootstock) that would take several years to produce a crop," so the expert valued plaintiffs' "future losses based on the cost to sequentially replant 47[ percent] of the vineyards" until "the replacement vines would have matured."

After the crop advisor lost its appeal, it paid plaintiffs the judgment in 2007. Plaintiffs elected in their 2007 tax return for $3,260,166 of the judgment to be treated under section 1033. The Board rejected this treatment for plaintiffs' state income tax return. Plaintiffs exhausted their administrative remedies and the Board did not change its position. Plaintiffs paid the disputed tax assessment on December 31, 2018.

On May 15, 2020, plaintiffs filed a complaint against the Board for refund of taxes. Plaintiffs and the Board filed competing motions for summary judgment with the aforementioned stipulation of undisputed material facts.

In plaintiffs' complaint, they explained they used the $3,260,166 "to purchase citrus orchards to replace the [d]estroyed [v]ines." In plaintiffs' opposition to the Board's motion for summary judgment, plaintiffs asserted they "used $3,260,166 from their awarded damages to purchase approximately 40 acres of mature producing citrus trees in 2007." Plaintiff Skouti stated in a declaration: "The citrus orchards that I purchased were similar to my damaged vineyards in that they contained mature perennial crops that were farmed for commercial agricultural production and harvested once each year for sale to consumers."

On October 3, 2023, the trial court granted the Board's motion and denied plaintiffs' motion. The court determined the replacement property, consisting of land and fully matured trees, was "not sufficiently similar to constitute a replacement of the damaged grape vines [sic] for the purposes of . . . section 1033."

Plaintiffs appeal.

3

DISCUSSION

Plaintiffs contend the trial court erred because the citrus orchard was " 'replacement property' " within section 1033. Plaintiffs assert, "They lost one type of agricultural real property. They were compensated for that loss. They used that compensation to buy another type of agricultural real property." The Board argues that plaintiffs did not satisfy section 1033 because "grapevines are not 'similar or related in service or use to' the additional 40 acres of land containing citrus trees." We agree with the Board.

Summary judgment should be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) " 'Because this case comes before us after the trial court granted a motion for summary judgment, we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*LaBarbera v. Security National Ins. Co.* (2022) 86 Cal.App.5th 1329, 1338-1339.) We owe no deference to the trial court's reasoning; our task is to review the trial court's decision, not its rationale. (*Murchison v. County of Tehama* (2021) 69 Cal.App.5th 867, 882.)

Section 1033, adopted for California tax law through Revenue and Taxation Code section 18031, permits nonrecognition of gain from involuntary conversions of property in certain circumstances. If the conversion is into money, the taxpayer need not recognize the gain if the taxpayer "purchases other property similar or related in service or use to the property so converted" within an allotted time. (§ 1033, subd. (a)(2)(A).) To determine whether replacement property is " ' "similar or related in service or use" ' "

4

to the converted property, courts "look to the taxpayer's relationship to his [or her] old and new investments." (*Davis v. U.S.* (9th Cir. 1979) 589 F.2d 446, 449.) The Ninth Circuit has explained: " 'The test is a practical one. The trier of fact must determine from *all* the circumstances whether the taxpayer has achieved a sufficient continuity of investment to justify non-recognition of the gain, or whether the differences in the relationship of the taxpayer to the two investments are such as to compel the conclusion that he[, she, or they] has [or have] taken advantage of the [conversion] to alter the nature of his[, her, or their] investment for his[, her, or their] own purposes.' " (*Ibid.*) "[T]he essential inquiry is whether the taxpayer has committed the [conversion] award to a substantially equivalent investment, the relevant facts include all of those [that] would influence an investor in determining the attractiveness of the respective uses for his[, her, or their] capital." (*Filippini v. U.S.* (9th Cir. 1963) 318 F.2d 841, 845.) "[T]he purpose of section 1033 'is to relieve the taxpayer of unanticipated tax liability arising from involuntary conversion of his[, her, or their] property . . . . The statute is to be liberally construed to accomplish this purpose.' " (*Davis*, at p. 450.)

In *Davis*, the Ninth Circuit applied this rule where a taxpayer owned "industrial property being developed for lease, and improved agricultural land leased for sugar cane cultivation and livestock grazing. [The t]axpayer also owned a sea fishery adjacent to its agricultural property." (*Davis v. U.S.*, *supra*, 589 F.2d at p. 447.) Hawaii condemned the sea fishery and portions of the agricultural land and the "[t]axpayer used the condemnation proceeds to build a storm drainage and water system, grade land, and excavate a roadway in . . . [the] land [the] taxpayer was developing for lease to industrial concerns." (*Ibid.*) The Ninth Circuit found the improvements represented a " 'substantial continuation' " of the taxpayer's existing investment because: "[T]he risk attendant to [the] taxpayer's investment in the industrial park was not greater than the risk concomitant with an investment in agricultural land. [The t]axpayer's management also

5

remained substantially the same, without great variance in cost or service." (*Id*. at pp. 449-450.)

With this understanding, plaintiffs here do not qualify for the benefit of section 1033. The undisputed facts are that the property involuntarily converted was plaintiffs' grapevines. These agricultural fixtures are improvements to land. (See Civ. Code, § 660; Rev. & Tax. Code, § 105, subd. (a)(2).) Plaintiffs maintain the replacement property purchased with the judgment proceeds was 40 acres of a citrus orchard. This is not sufficiently similar or related in service under section 1033, subdivision (a) because the citrus orchard is both agricultural fixtures *and land*. Even assuming the replacement property's agricultural fixtures—citrus trees—are a sufficiently equivalent investment as the converted agricultural fixtures—grapevines—the replacement property includes the underlying land. Both land and fixtures are elements of real property. (Civ. Code, § 658.) But they are distinct—"[l]and is the material of the earth," (Civ. Code, § 659), whereas fixtures are "affixed to land," such as through "attach[ment] to it by roots" (Civ. Code, § 660). And this distinction means agricultural fixtures by themselves represent a different investment than land with agricultural fixtures.

This case exemplifies this point. Plaintiffs' investment in the vines carried different risks compared to the underlying land because plaintiffs' judgment was for damages to the grapes and vines but not for damage to the land. The parties' stipulated facts further explained plaintiffs' expert at trial calculated future losses that were based on the "planting of seedlings (aka rootstock) that would take several years to produce a crop," so the expert valued plaintiffs' "future losses based on the cost to sequentially replant 47[ percent] of the vineyards" until "the replacement vines would have matured." Damages were not associated with the land itself and instead the land could still be planted with grapevines. This is also inherent with a citrus orchard—if in the future the citrus trees were damaged in a similar manner as the grapevines, plaintiffs could still have two parcels of productive land even if all agricultural fixtures were damaged. This

6

establishes plaintiffs' land and grapevines were not equivalent investments, and therefore neither would grapevines be equivalent to land containing citrus trees.

For these reasons, this case is dissimilar from *Davis*, contrary to plaintiffs' assertions. The involuntarily converted property in *Davis* was the entirety of the property, improvements *and land*, not just the improvements to the land. (*Davis v. U.S.*, *supra*, 589 F.2d at p. 447 ["The state of Hawaii condemned [the] taxpayer's sea fishery and various portions of [the] taxpayer's agricultural property"].)[1] The proceeds from the converted improved land were then invested into improving industrial land, thus this was a continuation of the taxpayer's original investment with similar risk, management, and costs as the converted property. (*Davis*, at pp. 449-450.) Not so here. Plaintiffs used proceeds from improvements to invest into improved land, with different investment considerations, constituting a discontinuation of plaintiffs' original investment. Had the entirety of plaintiffs' property been converted and had plaintiffs used the funds to invest into similar improved land, like in *Davis*, the outcome may be different. But that is not the case presented here, where the only thing converted was grapevines.

We find a Fifth Circuit case cited by the Board more on point than *Davis*: *Woodall v. C.I.R.* (5th Cir. 1992) 964 F.2d 361. There, insurance proceeds from a fire to a nightclub were spent in part on buying other "land, building and improvements." (*Id*. at p. 362.) The Fifth Circuit found the replacement improved land was not " 'similar or related in service or use' " to the nightclub because "[t]he loss was only to [the taxpayers'] improvements. . . . The fire in the [nightclub] did not force the taxpayers to buy the nightclub buildings; their lease interest had remained intact. . . . The purchase of the building replaced no damaged property and the funds used for its purchase do not fall

---

[1]    The underlying district court case further explained Hawaii condemned the land to construct highways. (*Davis v. U.S.* (D.Hawaii 1976) 411 F.Supp. 964, 965.)

7

within [section] 1033." (*Woodall*, at p. 364.) Similarly here, the damage was only to plaintiffs' improvements, and their interest in the underlying land remained intact.

Plaintiffs also often cite to the requirement section 1033 must be "liberally construed" in their favor. They suggest: "Courts should eschew picayune hairsplitting in favor of a liberal construction of the statute that gives taxpayers who have suffered a major loss a much-needed break." But liberal does not mean limitless. Taxpayers cannot use section 1033 to "take[] advantage of the condemnation to alter the nature of [their] investment for [their] own purposes." (*Filippini v. U.S.*, *supra*, 318 F.2d at pp. 844-845.) We do not conclude plaintiffs necessarily had to replant grapevines to satisfy section 1033. (*Loco Realty Company v. C.I.R.* (8th Cir. 1962) 306 F.2d 207, 211 ["It is not necessary that the replacement property be an exact duplicate of the original"].) We instead conclude simply that plaintiffs' purchase of land containing agricultural fixtures does not constitute a continuation of their investment in agricultural fixtures alone. The Board therefore correctly disallowed nonrecognition of gain under section 1033, and we consequently affirm the trial court's order finding so and the resulting judgment of dismissal.

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)



/s/ _____
ROBIE, J.


We concur:


/s/ _____
EARL, P. J.


/s/ _____
DUARTE, J.